**RECORD NO. 21-4687**

*In The*

# United States Court of Appeals

### For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

**v.**

## ALEXANDER HILLEL TREISMAN,
## a/k/a Alexander S. Theiss,

*Defendant – Appellant.*

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### AT GREENSBORO

―――――――――

### REPLY BRIEF OF APPELLANT

―――――――――

**Daniel M. Blau**
**DANIEL M. BLAU, ATTORNEY AT LAW, PC**
**887A Washington Street**
**Raleigh, North Carolina 27605**
**(919) 256-3606**

*Counsel for Appellant*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................. ii

CLARIFICATION OF FACTS ...............................................................1

CLARIFICATION OF THE DISTRICT COURT'S FINDINGS ............................2

ARGUMENT .................................................................................3

    I.    The District Court erred by concluding that officers had reasonable grounds to enter and search Mr. Treisman's van because a hypothetical person in the van was probably in medical distress and needed immediate help ......................................................3

    II.    The District Court erred by concluding that the warrantless impoundment and inventory search of Mr. Treisman's van was reasonable under the community caretaking exception to the warrant requirement ..............................................................6

        A.    The inventory search was unlawful ...........................................6

        B.    Application of the exclusionary rule is appropriate.................11

CONCLUSION ................................................................................14

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>CASES</u>

*Allen v. Johnson*,
   396 F. App'x 46 (4th Cir. 2010) (unpublished) ...............................9

*Colorado v. Bertine*,
   479 U.S. 367 (1987)......................................................................8

*Durney v. Doss*,
   106 F. App'x 166 (4th Cir. 2004) (unpublished) ...........................4

*Herring v. United States*,
   555 U.S. 135 (2009)................................................................12, 13

*Hudson v. Michigan*,
   547 U.S. 586 (2006)..........................................................11, 12, 13

*Hunsberger v. Wood*,
   570 F.3d 546 (4th Cir. 2009), *cert. denied*,
   559 U.S. 938 (2010)......................................................................5

*Murray v. Carrier*,
   477 U.S. 478 (1986)......................................................................9

*Muth v. United States*,
   1 F.3d 246 (4th Cir. 1993) ............................................................9

*Sawyer v. Whitley*,
   505 U.S. 333 (1992)......................................................................9

*South Dakota v. Opperman*,
   428 U.S. 364 (1976).................................................................3, 4

*United States v. Brown*,
   787 F.2d 929 (4th Cir.), *cert. denied*,
   479 U.S. 837 (1986).............................................................7, 8, 10

*United States v. Cobb*,
　　970 F.3d 319 (4th Cir. 2020) ..............................................................9

*United States v. Dyess*,
　　730 F.3d 354 (4th Cir. 2013) ..............................................................9

*United States v. Edwards*,
　　666 F.3d 877 (4th Cir. 2011) ..............................................................9

*United States v. Gwinn*,
　　219 F.3d 326 (4th Cir.), *cert. denied*,
　　531 U.S. 1025 (2000) ......................................................................4, 5

*United States v. Herrera-Pagoada*,
　　14 F.4th 311 (4th Cir. 2021) ..............................................................9

*United States v. Johnson*,
　　410 F.3d 137 (4th Cir.), *cert. denied*,
　　546 U.S. 952 (2005) ............................................................................4

*United States v. Medford*,
　　661 F.3d 746 (4th Cir. 2011), *cert. denied*,
　　565 U.S. 1252 (2012) ........................................................................10

*United States v. Moss*,
　　963 F.2d 673 (4th Cir. 1992) ..............................................................6

*United States v. Powers*,
　　439 F.2d 373 (4th Cir.), *cert. denied*,
　　402 U.S. 1011 (1971) ..........................................................................4

*United States v. Ray*,
　　201 F.3d 438, 1999 U.S. App. LEXIS 26822 (4th Cir. 1999) .....................10

## CONSTITUTIONAL PROVISION

U.S. Const. amend. IV ..............................................................3, 11, 12

## **OTHER AUTHORITIES**

Kannapolis Code of Ordinances, Section 10-231 ........................................8

Kannapolis Code of Ordinances, Section 10-232 ........................................8

Kannapolis Code of Ordinances, Section 10-236(a) ...................................8

Kannapolis Code of Ordinances, Section 10-238 ........................................8

Kannapolis Police Department General Order, Section 900-02(C) ...................8, 10

Kannapolis Police Department General Order, Sections 900-02(F)(1)(a)-(b) .........8

Kannapolis Police Department General Order, Section 900-02(F)(2) ...................8

Kannapolis Police Department General Order, Section 900-02(G)(2)...................8

## **CLARIFICATION OF FACTS**

The Government asserts that after Officer Lambert opened the van and climbed inside to look around with a flashlight attached to his pistol, the officers stood by the van and did not continue to search it until they determined what to do next.  *See* Brief for Appellee at 10.  This is not entirely accurate.  Although the officers did not begin a comprehensive search at that time, Sergeant Lafferty came to the bank and also looked around inside the van, even though Officers Lambert and Wagner had already done so.  Although Sergeant Lafferty had been informed that the other officers had already "done a sweep of the back of the van," he searched the van again because he thought the other two officers might have "somehow missed a person." (J.A. 381, 396-97) Like the other officers, Sergeant Lafferty never knocked on the van or called out to the hypothetical person who might have been inside. (J.A. 396)

The Government further asserts that the officers "contacted a tow company to tow the van," but "determined that a tow company would not tow the vehicle without police assistance," and "[t]he on-call tow company representative confirmed that they would not tow a vehicle without police assistance."  Brief for Appellee at 11. This is also not entirely accurate.  Although the officers ultimately had the van towed, there is no evidence in the record about any conversations they had with any tow company regarding the van.  Captain Smith testified that he did not think a tow

company would tow the van without police assistance (J.A. 331, 356-57), but there is no evidence that he ever contacted any tow company to determine whether they would do so.  There is also no evidence that a tow-company representative told police that they would not tow the van without police assistance.  A company called D&M Wrecker Service apparently towed the van for police (J.A. 165), but there was no specific evidence of the communications between police and D&M Wrecker Service that day.  A representative from a different company that was not involved, H&H Towing, testified that they sometimes towed cars for the bank, and that they would request police assistance if they found firearms in a vehicle. (J.A. 160-64) However, there was no evidence that either the bank or the officers ever contacted H&H Towing or any of the other ten local towing companies (J.A. 162) on the day of the incident to ask whether they would tow the van without police assistance.

## CLARIFICATION OF THE DISTRICT COURT'S FINDINGS

The Government also references a number of factual findings the District Court made following the suppression hearing.  *See* Brief for Appellee at 12-18. While the District Court and the Government may have referred to these as factual findings, many of them are actually conclusions of law; for example: whether the officers' belief that someone was in need of medical assistance in the back of the van was reasonable (J.A. 487); whether the officers' belief that a wellness check was necessary was reasonable (J.A. 484); whether the officers' actions were indicative

2

of a pretext for conducting a criminal investigation (J.A. 488); whether the officers

acted in accordance with the city code and police regulations (J.A. 495); whether the

police policies were reasonable (J.A. 498); and whether the inventory search was

conducted legally and according to police policy (J.A. 508-09). This Court should

review these and other legal conclusions *de novo*, regardless of whether the District

Court or the Government may have referred to them as factual findings.

## ARGUMENT

### I.     The District Court erred by concluding that officers had reasonable grounds to enter and search Mr. Treisman's van because a hypothetical person in the van was probably in medical distress and needed immediate help.

Throughout its brief, the Government asserts that the officers' initial search

of Mr. Treisman's van was justified under the community-caretaking exception to

the Fourth Amendment's warrant requirement. As discussed in Mr. Treisman's

opening brief, however, that is not the proper test for evaluating the officers' actions

when responding to a possible medical emergency.

As the Government itself recognizes, the community-caretaking exception

exists because "police often come into contact with vehicles for reasons *related to

the operation of vehicles themselves*." Brief for Appellee at 20 (emphasis added;

quotation omitted). Each case the Government cites involves officers searching or

impounding a vehicle for traffic-related reasons. *See South Dakota v. Opperman*,

428 U.S. 364 (1976) (police lawfully impounded a car for violating parking

ordinances and impeding traffic); *United States v. Powers*, 439 F.2d 373 (4th Cir.) (after police arrested a driver and impounded his car, they lawfully opened the car door to find the VIN in order to identify the car), *cert. denied*, 402 U.S. 1011 (1971); *Durney v. Doss*, 106 F. App'x 166 (4th Cir. 2004) (unpublished) (police lawfully opened a truck toolbox to attempt to identify the owner of a vehicle that had been in an accident). None of these cases involved a medical emergency.

The Government also cites *United States v. Johnson*, 410 F.3d 137 (4th Cir.), *cert. denied*, 546 U.S. 952 (2005), for the proposition that the community-caretaking exception applies when police enter a car after a traffic accident to assess an occupant's medical condition. *See* Brief for Appellee at 21. *Johnson*, however, was actually a traffic case. There, police responded to a traffic accident and found a car blocking traffic on a major road. The driver was conscious but not responsive. An officer opened the glove box to find information that might allow him to identify and assess the driver so that he could move the car out of the traffic lane. *See id.* at 144-45. This Court upheld the officer's actions, noting that under *Opperman*, the officer was permitted to perform the community-caretaking function of removing the car from the street in order to resume the normal flow of traffic. *See id.* at 144.

The only case the Government cites outside of the vehicle-operation context is *United States v. Gwinn*, 219 F.3d 326 (4th Cir.), *cert. denied*, 531 U.S. 1025 (2000). *Gwinn*, however, was not a community-caretaking case. In *Gwinn*, officers

4

had arrested a man who was not wearing shoes or a shirt, and they entered his home without a warrant to retrieve his clothing. This Court recognized that the officers' actions did not come within the community-caretaking exception, but relied on the exception's general rationale to create a new "clothing exception" to the warrant requirement. *See Gwinn*, 219 F.3d at 334.

In this case, the officers' initial search of Mr. Treisman's van was not based on a community-caretaking purpose related to the operation of that vehicle. Rather, the officers claimed they entered the van – some 90 minutes after they first arrived on the scene, and without first knocking or calling out to anyone who might have been inside – to address an immediate medical emergency. As this Court has explained:

> [W]hen analyzing a search made as the result of a routine police procedure, such as the policy of locating weapons in towed cars in [*Cady*], the court should examine the programmatic purpose of the policy – whether it was animated by community caretaking considerations or by law enforcement concerns. But when the search in question was performed by a law enforcement officer responding to an emergency, and not as part of a standardized procedure, the exigent circumstances analysis and its accompanying objective standard should apply.

*Hunsberger v. Wood*, 570 F.3d 546, 554 (4th Cir. 2009), *cert. denied*, 559 U.S. 938 (2010). Because the officers initially entered the van not as part of a standard procedure, but instead to address a purported medical emergency, their actions

5

should be analyzed under the emergency doctrine, and not under the community-caretaking exception.

On this point, the Government's brief is more notable for what it *does not* say than for what it does: the Government never addresses the emergency doctrine. Mr. Treisman submits that the reason the Government has not addressed the emergency doctrine is because the officers' actions cannot be justified under that doctrine. For all of the reasons discussed in Mr. Treisman's opening brief, the officers simply did not have "an objectively reasonable belief that an emergency existed that required immediate entry to render assistance or prevent harm to persons" inside the van. *United States v. Moss*, 963 F.2d 673, 678 (4th Cir. 1992).

II.     **The District Court erred by concluding that the warrantless impoundment and inventory search of Mr. Treisman's van was reasonable under the community caretaking exception to the warrant requirement.**

A.     The inventory search was unlawful

The Government first argues that the officers' decision to impound Mr. Treisman's van was reasonable because they could not immediately identify the owner, there were firearms in plain view, and the van could have become the target of theft. *See* Brief for Appellee at 24-27.

Mr. Treisman does not necessarily dispute that the officers' *decision* to impound the van was reasonable under those circumstances. The reasonableness of that decision, however, is not the question. Even assuming the officers' decision

was reasonable, the question is whether they acted reasonably or lawfully in carrying out that decision when they took custody of the van in violation of the city code and their own guidelines without contacting the proper authorities or providing notice, used unfettered discretion to decide whether to conduct an inventory search, and then conducted the inventory search in a manner designed to uncover evidence of criminal activity, rather than in a manner designed to protect Mr. Treisman and the police from claims of theft or loss.

The Government next asserts that an inventory search is "authorized" where the circumstances justify impoundment of a vehicle and police conduct the search according to standard procedures. *See* Brief for Appellee at 28-29. As noted in Mr. Treisman's opening brief, those are not the only criteria that police must meet in order to conduct a lawful inventory search. The officers (a) must have lawfully taken custody of the vehicle, (b) must conduct the inventory pursuant to standard procedures, and (c) the inventory cannot be used as a pretext for gathering incriminating evidence. *See, e.g.*, *United States v. Brown*, 787 F.2d 929, 931-32 (4th Cir.), *cert. denied*, 479 U.S. 837 (1986).

On the first point, the Government claims that the officers towed the van pursuant to their towing policy, *see* Brief for Appellee at 27, but it never cites specific policy and code provisions to support that position. For example, the Government writes that the officers determined, "based upon their experience, [that]

this vehicle was not of the type and condition typically referred to the City Zoning Administrator," brief for Appellee at 28, but it does not argue that this was consistent with the actual city code or the police policies. Nor could it, as it is clear that under either authority, the city zoning administrator has the sole discretion to remove an abandoned vehicle from private property and to decide whether to waive the required seven-day notice. *See* Kannapolis Code of Ordinances, Sections 10-231, -232, -236(a), -238 (J.A. 588-92); Kannapolis Police Department General Order Sections 900-02(F)(1)(a)-(b), (F)(2), (G)(2). Here, the officers simply assumed that the zoning administrator would waive the required notice and ask police to tow the van for them, so the officers decided to skip those steps and tow the van on their own without prior authorization or a notice determination, in violation of the code and their orders. That was not a lawful or reasonable way for the officers to impound the van.

On the second point, the Government does not attempt to defend KPD Order 900-02(C). The Government does not dispute that Order 900-02(C) gave the officers unfettered discretion to decide whether to conduct an inventory search; nor does the Government claim that Order 900-02(C) complies with the requirements for a lawful inventory search as discussed in cases such as *Brown* and *Colorado v. Bertine*, 479 U.S. 367, 375 (1987). Rather, the Government only asserts that Mr. Treisman did not raise this argument below. *See* Brief for Appellee at 29-30.

The Government cites a number of cases for the proposition that this Court should not consider this portion of Mr. Treisman's argument. The Government's cases, however, involve non-analogous situations where a party either defaulted on a legal claim or raised an entirely new legal claim on appeal. Specifically, the issues in those cases involved: a defendant raising successive claims in a habeas petition[1]; a procedural default in a habeas case seeking review of a state conviction[2]; a civil statute of limitations precluding relief under the Federal Tort Claims Act[3]; a defendant relying on facts in a habeas appeal that he had not presented to the District Court[4]; the defendant in a habeas appeal raising a new statutory basis for relief for the first time on appeal[5]; a defendant failing to challenge a District Court's ruling or brief the issue on appeal[6]; a defendant raising an *Apprendi* claim for the first time in his habeas appeal[7]; a party failing to raise a particular legal argument in its appeal[8]; a defendant raising a legal question of statutory interpretation for the first time on

---

[1] *See Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992).
[2] *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).
[3] *See Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993).
[4] *See Allen v. Johnson*, 396 F. App'x 46, 47 (4th Cir. 2010) (unpublished).
[5] *See United States v. Herrera-Pagoada*, 14 F.4th 311, 318 (4th Cir. 2021).
[6] *See United States v. Cobb*, 970 F.3d 319, 331-32 (4th Cir. 2020).
[7] *See United States v. Dyess*, 730 F.3d 354, 365 (4th Cir. 2013).
[8] *See United States v. Edwards*, 666 F.3d 877, 887 (4th Cir. 2011).

appeal[9]; and a defendant raising a new legal theory to challenge a search warrant on appeal that he had not raised below.[10]

Here, in contrast, Mr. Treisman is making the same legal argument that he made before the District Court: that the officers acted unreasonably and did not conduct a lawful seizure or inventory search of his van pursuant to the community-caretaking exception to the warrant requirement. Under *Brown*, the discretion given to officers under KPD Order 900-02(C) was one factor the District Court should have considered in its analysis. Even if defense counsel did not specifically reference that part of the KPD Orders in its argument to the District Court, it was still part of the trial record, required no additional factual development, and was simply one factor supporting Mr. Treisman's position that the officers' actions were unreasonable. Mr. Treisman's discussion of this factor on appeal supports the same legal argument he made below, and he is not advancing a new legal claim for the first time on appeal.

---

[9] *See United States v. Medford*, 661 F.3d 746, 754 (4th Cir. 2011), *cert. denied*, 565 U.S. 1252 (2012).
[10] *See United States v. Ray*, 201 F.3d 438, 1999 U.S. App. LEXIS 26822 (4th Cir. 1999) (per curiam) (unpublished).

B.    <u>Application of the exclusionary rule is appropriate</u>

The Government concludes by asserting that even if the officers violated their own polices, the Kannapolis City Code, the North Carolina General Statutes, and the community-caretaking exception to the Fourth Amendment, this still would not warrant suppression because suppression is only meant to deter deliberate, reckless, or negligent conduct.  *See* Brief for Appellee at 31-32.

Because the District Court did not find a Fourth-Amendment violation below, it did not need to determine whether suppression was an appropriate remedy to address that violation.  Therefore, should this Court agree with Mr. Treisman that the officers committed a Fourth-Amendment violation, this Court may wish to remand this case to the District Court to make the suppression determination in the first instance.  If this Court does addresses this issue, however, Mr. Treisman contends that suppression is appropriate under the circumstances of this case.

The Government cites two cases in support of its argument that suppression is not warranted.  In *Hudson v. Michigan*, 547 U.S. 586 (2006), police lawfully obtained a search warrant supported by probable cause, but committed a technical Fourth-Amendment violation by only waiting a few seconds between knocking on the defendant's door and entering his house to serve the warrant.  *See id.* at 588-90. The Supreme Court held that suppression was not appropriate on those facts.  To begin, the illegality was not a "but-for" cause of police obtaining the disputed

11

evidence; the officers would have executed the warrant and discovered the evidence even if the illegality had not occurred. *See id.* at 592. In addition, the Court recognized that the defendant's right to privacy in his home and effects was already protected by the fact that the officers had obtained the warrant based on probable cause. The defendant's interests that were served by the knock-and-announce rule – such as having an opportunity to collect himself before answering the door – had nothing to do with the seizure of evidence. As such, the exclusionary rule was not applicable. *See id.* at 593-94.

In *Herring v. United States*, 555 U.S. 135 (2009), a warrant was issued for the defendant's arrest but was later recalled. Due to an unknown error, however, the warrant still appeared in the county sheriff's computer database. The defendant was arrested on the recalled warrant, and was later indicted based on contraband found in his possession during his arrest. *See id.* at 137-38. The Supreme Court accepted that there had been a Fourth-Amendment violation, *see id.* at 139, but held that suppression was not required. The Court noted that even if some government actor had been negligent in failing to remove the recalled warrant from the computer system, the arresting officers had reasonably relied on the warrant and had done nothing improper. *See id.* at 140. Because the officers had not acted deliberately, recklessly, or with gross negligence, and because the situation did not involve

recurring or systemic negligence, suppression would not meaningfully deter police misconduct and therefore was not warranted. *See id.* at 143-44.

In contrast to *Hudson* and *Herring*, the circumstances in Mr. Treisman's case do support application of the exclusionary rule. To begin, the illegality was a but-for cause of the officers obtaining the challenged evidence. If the officers had not manufactured a medical exigency to initially enter the van, they would not have discovered the items in the back of the van; likewise, if the officers had followed their own regulations and the city code by contacting the city zoning administrator and giving proper notice of the impoundment, Mr. Treisman would have returned to his van prior to the impoundment and inventory search and would have regained custody of his van and its contents.

In addition, Mr. Treisman had a right to privacy in the effects inside his van. Unlike the knock-and-announce violation in *Hudson*, the officers' illegal entry into his van and their subsequent search of its contents without prior judicial approval directly implicated Mr. Treisman's privacy rights. Because Mr. Treisman's interests were directly related to the seizure of evidence, the exclusionary rule is appropriate.

Finally, this is not a situation involving something relatively benign, such as a computer error committed by a non-police actor. Rather, the unlawful conduct here directly involved multiple officers at both the patrol and supervisory levels. Even if the officers may have been dealing with an unusual situation when they

encountered Mr. Treisman's van, they acted with at least gross negligence by entering the van to address a supposed medical emergency for which there was no real justification.  They also acted with at least gross negligence by violating their own regulations and the city code when they failed to contact the appropriate authorities or seek the necessary authorization and waiver of notice prior to seizing Mr. Treisman's van and conducting an inventory search.  Finally, insofar as the police regulations also inappropriately gave them unfettered discretion to decide whether to conduct the inventory search, their actions did involve systemic and possibly recurring problems.  Under these circumstances, suppression would meaningfully deter the officers' conduct.  Application of the exclusionary rule is thus warranted in this case.

## **CONCLUSION**

For the reasons discussed here and in his opening brief, Mr. Treisman respectfully requests that this Court reverse the District Court's order denying his motion to suppress, vacate the judgments against him, and remand this case for further proceedings.

DANIEL M. BLAU,
ATTORNEY AT LAW, PC

/s/ *Daniel M. Blau*
Daniel M. Blau
N.C. State Bar No. 36632
Attorney for Defendant-Appellant
887A Washington Street
Raleigh, N.C. 27605
Telephone: (919) 256-3606

## <u>CERTIFICATE OF COMPLIANCE</u>

1.     This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[ X ] this brief contains [*3,379*] words.

[    ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2.     This brief complies with the typeface and type style requirements because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated:  <u>October 21, 2022</u>            <u>/s/ Daniel M. Blau</u>
                                                              *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 21st day of October, 2022, I caused this Reply

Brief of Appellant to be filed electronically with the Clerk of the Court using the

CM/ECF System, which will send notice of such filing to the following registered

CM/ECF users:

> Graham T. Green
> Craig M. Principe
> OFFICE OF THE U.S. ATTORNEY
> 251 North Main Street, Suite 726
> Winston-Salem, North Carolina  27101
> (336) 631-5268
>
> *Counsel for Appellee*

/s/ Daniel M. Blau
*Counsel for Appellant*